# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

KIMBERLY A. ROBERTSON,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 17-CV-87-LRR

**REPORT AND RECOMMENDATION**

_____

Kimberly A. Robertson ("claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the following reasons, I respectfully recommend that the District Court **affirm** the Commissioner's decision.

## I.  BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts (Doc. 17) and therefore only summarize the pertinent facts here. Claimant filed an application for supplemental security income on April 23, 2010, alleging a disability onset date of February 14, 2009. (AR 13).[1] The Commissioner denied claimant's application and claimant appealed the decision to this Court. This Court reversed and remanded the Commissioner's decision with instructions to "fully and fairly develop the record with regard to the opinions of Dr. Piburn. The ALJ must also consider all of the evidence

---

[1] "AR" stands for the Administrative Record below.

relating to Robertson's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations, particularly in light of his consideration of Dr. Piburn's opinion." *Robertson v. Colvin*, No. C14-2005, 2014 WL 5810112, at *10 (N.D. Iowa, Nov. 7, 2014).

Claimant was born in 1967, and was forty-two years old on the alleged disability onset date. (AR 441). Claimant has a marginal education and is able to communicate in English. (AR 442). On remand, ALJ Tom Andrews held a hearing on the matter and issued a decision denying the claim on July 19, 2016. On June 5, 2017, the Appeals Council denied review. (AR 409-12). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 28, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). By March 30, 2018, the parties had briefed the issues. (Docs. 18, 19). On April 23, 2018, the Court deemed this case fully submitted and ready for decision. That same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to

get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the

regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination

4

about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ's FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since her alleged onset date. (AR 430).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "borderline personality disorder versus major depressive disorder; generalized anxiety disorder; substance addiction disorder; medically determinable low back impairment; migraines." (AR 431).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 432).

At Step Four, the ALJ determined that claimant had the residual functional capacity ("RFC") to perform light work with the following restrictions:

> [S]he should avoid more than moderate exposure to light and noise levels. She is limited to performing simple, routine tasks with short and simple instructions. She can make simple work-related decisions with only occasional workplace changes. The claimant should have no interaction with the public. She may have occasional interaction with coworkers and supervisors. She should not perform work at a production rate pace, and should perform at no more than a regular work pace.

(AR 434). Based on the ALJ's RFC assessment, the ALJ determined that claimant was unable to perform her past relevant work. (AR 441).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform,

including folder, housekeeping cleaner, and document preparer. (AR 442). Therefore, the ALJ concluded that claimant was not disabled. (AR 443).

### IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health*

6

& *Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges that the ALJ's decision is erroneous because the ALJ failed to properly evaluate the work-related limitations from Drs. Marvin Piburn and Muhammed Chowdry, the ALJ's decision is not supported by substantial medical evidence from a treating or examining source, and the ALJ failed to order a consultative examination. I shall address each issue in turn.

### A. Drs. Piburn and Chowdry

Dr. Marvin Piburn, M.D., and Dr. Muhammed Chowdry, M.D., both psychiatrists, treated claimant. (AR 437, 439). The ALJ afforded each doctor's opinions less than controlling weight. (AR 437, 440).

Claimant argues that both treating physicians found that claimant had disabling limitations and that the ALJ should have given the treating doctors' opinions controlling weight in determining claimant's RFC. (Doc. 18, at 4-6). In support thereof, claimant asserts that a treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." (*Id.*, at 6). Claimant argues that Drs. Piburn's and Chowdry's opinions fit the criteria to be afforded controlling weight and, therefore, the ALJ erred by affording their opinions less than controlling weight. (*Id.*, at 6-15). As a result, claimant argues, the ALJ's RFC assessment was flawed. (*Id.*).

The Commissioner, in response, argues that the ALJ's decision was supported by substantial evidence on the record as a whole. (Doc. 19, at 6-12). Specifically, the Commissioner argues that each doctor's opinion was inconsistent with the record as a whole, including with each respective physician's treatment notes. (*Id.*, at 8). Further, the Commissioner argues that the ALJ properly discredited each physician's opinion based on his reliance on claimant's subjective complaints, which the ALJ determined were not entirely credible. (*Id.*, at 10). Finally, the Commissioner argues that each doctor's opinions were inconsistent with claimant's activities and, therefore, the ALJ could properly discredit the opinions. (*Id.*, at 11).

"'A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009)); 20 C.F.R. § 404.1527(d)(2). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight."

8

*Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (internal quotation marks omitted). A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "It may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Samons*, 497 F.3d at 818). "The ALJ 'may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (omission in original) (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)). Ultimately, an ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

The ALJ found that both doctors based their opinions largely on claimant's subjective allegations, which the ALJ separately discredited. (AR 437, 440). Claimant does not challenge the weight attributed to her subjective allegations. As such, I find that the ALJ could properly discount the opinions based on claimant's unreliable subjective allegations. To find otherwise would be to allow findings to stand when those findings were based on a faulty premise. Such reasoning would not be sound.

Turning first to the ALJ's assessment of Dr. Chowdry's opinions, I find that the ALJ properly discounted the opinions. Although Dr. Chowdry indicated significant impairments when answering mental impairment interrogatories (AR 1054-59), Dr. Chowdry's notes reflect largely normal status examinations. (*See* AR 1063-69). Likewise, the ALJ's determination that Dr. Chowdry's opinions were inconsistent with

the remaining record evidence is a sound one. The ALJ pointed to instances where claimant apparently travelled to Cedar Falls and Texas, which is severely at odds with Dr. Chowdry's diagnosis of agoraphobia, "which impairs [claimant's] ability to leave her home for virtually any reason." (AR 440, 1070). For these reasons, I recommend that the Court find that the ALJ did not err with respect to the weight afforded to Dr. Chowdry's opinions.

Further, the ALJ found that where Dr. Piburn's opinions purported to be based on objective medical findings, no such objective findings were ascertainable. (AR 437-38). Instead, the ALJ reasoned, Dr. Piburn based his opinions, again, on claimant's subjective complaints. (*Id.*). Upon a review of Dr. Piburn's notes, I agree with the ALJ that Dr. Piburn's opinions were largely based on claimant's subjective allegations. In fact, Dr. Piburn's notes reflect instances where claimant's allegations were used in evaluating claimant, but no testing was available. (*See, e.g.*, AR 229 ("Reports only 7th grade level skills-suggests some sort of learning disorder . . . or even Borderline Intellect but we have no testing here" (emphasis in original)).

Further, Dr. Piburn's notes are, at times, confusing at best and inconsistent at worst. For instance, when filling out a Psychiatric/Psychological Impairment Questionnaire, Dr. Piburn provided that claimant suffered from "ADHD & Learning disorder[;] disrupted Educ[ation] past 7th grade[;] no testing available." (AR 241). Dr. Piburn does not explain how he was able to diagnose claimant with ADHD and a learning disorder without conducting some form of testing. Dr. Piburn does, however, explain that "We don't measure IQ here-we are a clinical not an eval/testing facility." (AR 242 (emphasis in original)). Based on Dr. Piburn's admission that he did not rely on any diagnostic testing in reaching these diagnoses (AR 241-42), it stands to reason that these diagnoses are speculative, at best. In short, many of Dr. Piburn's diagnoses are not

10

supported by his treatment notes and, indeed, many of the diagnoses are undercut by his treatment notes.

Notably, Dr. Piburn provided that claimant would have to miss an estimated ten days of work per month due to her impairments. (AR 245, 247). That estimation, however, is based on the number of days of work claimant missed at her last job. (*Id.*). There is no indication that each of claimant's absences from her last job was necessary due to her impairments. Indeed, there is no indication as to *any* reason for claimant's absences in Dr. Piburn's notes. It is unclear, then, how Dr. Piburn could use the number of absences from claimant's prior job to estimate the number of medically necessary absences claimant would require from any future employment. As such, there is no apparent medical basis supporting this opinion.

I agree with the ALJ that Dr. Piburn's April 24, 2012, opinion can be discounted for similar reasons. Indeed, this opinion contains even less support than the opinion discussed *supra*. Likewise, Dr. Piburn's August 8, 2013 opinion is lacking in the same fashion.[2] Interestingly, the August opinion, which is dated after each of the two opinions discussed *supra* states that claimant does not "have a low IQ or reduced intellectual functioning." (AR 845). Dr. Piburn's previous indications of a severe inability of claimant to function at an intellectually normal level are in stark contrast to the assertion that claimant does not have impaired intellectual functioning. As such, the ALJ could properly discount Dr. Piburn's opinions.

---

[2] The questionnaire indicates that a diagnosis sheet was to be attached to the questionnaire. (AR 839). No such attachment has been included in the record, however. It is unclear whether the attachment was inadvertently left off when the questionnaire was transmitted from Dr. Piburn's office, or whether a clerical error in the Social Security Administration caused the attachment to be misplaced. Either way, it has not been provided to the Court and I, therefore, do not have the benefit of relying on it in reaching my conclusions. It is equally unclear whether the attachment was provided to the ALJ.

Finally, Dr. Piburn's June 25, 2013 letter states claimant's diagnoses and provides "It is felt that Ms. Robinson [sic] is not capable of working as it would cause an exacerbation of her mental health symptoms." (AR 794). Dr. Piburn did not state who felt this way. The sentence claiming that claimant cannot work uses very unique phrasing, such that it could be interpreted to mean that claimant herself feels she is not capable of working. If true, this would not amount to a medical opinion. Without medical evidence in support, however, it is impossible to find that Dr. Piburn's opinion is sufficiently supported. For the aforementioned reasons, I find that the ALJ properly afforded Dr. Piburn's opinions less than controlling weight. (AR 437). As such, I recommend that the Court find that the ALJ did not err in considering Dr. Chowdry's and Dr. Piburn's opinions.

### B. *Substantial Evidence*

Claimant next argues that the ALJ's decision was erroneous because it was not supported by substantial evidence from a treating or examining source. Specifically, claimant argues that there are no medical opinions contrary to those of Drs. Chowdry and Piburn and, further, no state agency psychological consultant opined that claimant was able to work. (Doc. 18, at 15-17). Claimant does not argue that the ALJ's decision is wholly unsupported by medical evidence. Rather, claimant argues that because the ALJ's decision is unsupported by a treating or examining source, the ALJ's decision is unsupported by *substantial* medical evidence. (*Id.*).

Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Here, the ALJ did rely on substantial medical evidence in reaching his decision. Although the ALJ stated that he was "unable to attribute *much* weight" to the opinions of Drs. Piburn and Chowdry, the ALJ, apparently, attributed *some* weight to their opinions. (AR 437, 440). An inability to attribute *much* weight to certain opinions is not the same as affording the opinions *no* weight. Thus, Drs. Piburn's and Chowdry's opinions were afforded at least some degree of weight.

Further, the ALJ repeatedly turned to the medical records themselves and claimant's own activities when assessing claimant's RFC. For instance, in considering claimant's allegations of daily migraines, the ALJ noted that "[a]n MRI of the brain was negative," and that "[o]ne treating individual believed headaches and blurry vision to merely be eyestrain, and the claimant admitted the medication butalbital was effective." (AR 436). On another occasion, the ALJ noted that one of claimant's treating doctors found her to be "anxious" at the beginning of her appointment, "but that after getting her alprazolam script she appeared to be very relaxed." (*Id.*). This is indicative that claimant's anxiety could be lessened with the appropriate medications. Indeed, the ALJ found "[t]he claimant's significant use of caffeine products, her ability to be very relaxed after getting a prescription for medication and the objective findings tend to suggest her alleged sleep difficulties and other symptoms were due in part to excessive caffeine use more than any mental impairment or combination of impairments." (*Id.*).

Likewise, the ALJ turned to the treatment records in finding that there was no support for the opinion that claimant would need to miss ten days of work per month. (AR 438). This allegation, like many others, was based purely on claimant's reported symptoms and was not based on any medical findings. (*Id.*). The ALJ also turned to medical records from August 2014:

> [T]he claimant reported her mood was stable on her current medications. She denied musculoskeletal or neurological problems. Her mental status examination was negative/normal. Her speech was found to be normal. .

> . . Her associations were normal/intact. She had no abnormal or psychotic thoughts. Insight and judgment were fair. She was oriented. Recent and remote memory were adequate. Attention and concentration were normal. Language was normal and logical. Mood and affect were appropriate. Her status was indicated as improving. The treatment note establishes the effectiveness of medication in reducing or controlling symptoms. The effectiveness of medication and negative/normal objective findings establish it is unlikely that the claimant's alleged symptoms reduce the claimant's capacity to perform work related activities to the degree claimed.

(AR 439 (citing AR 868-69)).

I have relayed only representative examples of when the ALJ turned to the medical records directly in reaching his decision that claimant was not disabled. Claimant has not argued that the ALJ's interpretation of the records is inaccurate and I find no inaccuracies upon my review. Thus, assuming the ALJ could properly turn directly to the medical records to support his decision, the ALJ's decision should stand.

The Eighth Circuit Court of Appeals has held that "[i]n the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley*, 829 F.3d 932 (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). Although medical opinion evidence was available here, the ALJ properly discounted that opinion evidence. Had the opinion evidence not been provided, the voluminous and detailed medical records themselves would have constituted sufficient evidence to support the ALJ's RFC assessment. Because the ALJ found the opinions largely unreliable and discounted them as a result, the opinions should not be viewed as contradictory to the medical records such that the records, in combination with the "less weight" afforded to the opinions, do not constitute substantial medical evidence. Instead, the records should be viewed as providing substantial medical evidence and the opinions, where reliable and, therefore, given some

14

weight, should be viewed as supplementing the records.  This line of thinking is sound only because the records themselves are detailed enough to provide substantial medical evidence alone and the opinions largely recite claimant's subjective allegations, which do not constitute medical evidence.

For these reasons, I recommend that the Court find that the ALJ's decision was supported by substantial medical evidence.

### C. *Consultative Examination*

The final issue I must confront is whether the ALJ erred by not ordering a consultative examination.  Claimant argues that the record was insufficient for the ALJ to render a decision and, therefore, the ALJ should have ordered a consultative examination. (Doc. 18, at 17-18).  In support, claimant argues that "the non-examining state agency psychological consultants found the medical evidence was insufficient to decide [claimant's] claim," and that "the ALJ relied to a great extent on the lack of objective testing to discount the opinions and limitations from Dr. Piburn and Dr. Chowdry."  (*Id.*, at 17).  Claimant further argues that claimant has not had a full psychological examination since 2011 and the ALJ therefore should have ordered a consultative examination because the treatment notes from her medication management sessions "are not very enlightening."  (*Id.*, at 18).

Claimant correctly asserts that a state agency psychological consultant opined that there was insufficient evidence to determine claimant's medical dispositions.  (AR 215). That opinion, however, was as of July 28, 2010.  (*Id.*).  The ALJ decision that is now being challenged was not made until July 19, 2016.  (AR 443).  In the interim, claimant continued to seek treatment and additional medical records were generated as a result. The ALJ placed significant reliance on those more current medical records.  (*See* AR 436-441).  The ALJ's opinion, then, was not based only on those records that were

15

"insufficient" for the consultant to render a complete opinion as to claimant's disability status.

Where an ALJ has sufficient evidence from a treating physician or counselors to make a disability determination, the ALJ need not order a consultative examination. *Nicholas v. Barnhart*, 2002 WL 1733262, at *1 (8th Cir. July 29, 2002) (per curiam) (unpublished). Because, as discussed above, the medical records provided substantial medical evidence upon which the ALJ could base his decision, I find that the consultant's opinion that insufficient records existed to determine claimant's medical disposition did not create an obligation for the ALJ to order a consultative examination.

Claimant next argues that the ALJ relied on the absence of objective testing to discount Dr. Piburn's and Dr. Chowdry's opinions. (Doc. 18, at 17). This is inaccurate. The ALJ did not rely on the lack of objective testing, *per se*, in discounting the opinions. Rather, the ALJ relied on the lack of objective testing to determine that the physicians relied on claimant's subjective allegations in formulating their opinions. From there, the ALJ properly discounted the opinions because they largely recounted claimant's subjective allegations. As a result, the opinions were not discounted simply because the physicians failed to conduct objective tests. Rather, the opinions were discounted because many of the opinions contained therein where simple recantations of claimant's subjective complaints, which do not themselves amount to medical evidence. Therefore, I find that the ALJ did not err in failing to order a consultative examination based on this argument.

Claimant's final argument is that the ALJ should have ordered a consultative examination so that he would have had the benefit of receiving a full psychiatric report prior to rendering a decision. (*Id.*, at 17-18). If the ALJ's decision were not otherwise supported by substantial medical evidence on the record as a whole, perhaps I would find this argument successful. I turn once again, however, to the Eighth Circuit's holding that where an ALJ has sufficient evidence from a treating physician or counselors to make

16

a disability determination, the ALJ is under no obligation to order a consultative examination. I have explained my finding that the ALJ's decision was supported by substantial medical evidence in the form of medical records from claimant's treating sources. As a result, even though claimant alleges that her most recent psychiatric evaluation was in 2011, I find that the ALJ was not required to order a consultative examination. Therefore I find that the ALJ's failure to order a consultative examination was not erroneous.

## VI.   CONCLUSION

For the reasons set forth above, I respectfully recommend that the District Court **affirm** the ALJ's decision.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 10th day of May, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa